FILED
SEP 29 2016

UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

*********************************************************************

| | | |
|---|---|---|
| CHARLES E. SISNEY, | * | CIV 15-4069 |
| Plaintiff, | * | |
| vs. | * | |
| | * | ORDER |
| DENNY KAEMINGK, in his official capacity as the South Dakota Secretary of Corrections; DARIN YOUNG, in his official capacity as the Warden of the South Dakota State Penitentiary; SHARON REIMANN, in her official capacity as an SDSP designated Mailroom Officer; and CRAIG MOUSEL, in his official capacity as an SDSP designated Property Officer, | * | |
| Defendants. | * | |

*********************************************************************

This matter is before the Court on the Report and Recommendation ("R&R") of Magistrate Judge Veronica Duffy dated May 25, 2016, Doc. 105. In the R&R, Magistrate Judge Duffy recommended that the Court grant in part and deny in part Plaintiff's Motion for Summary Judgment, Doc. 91, and grant in part and deny in part Defendants' Motion for Summary Judgment, Doc. 67. All parties filed timely objections to the R&R. According to statute, the Court must conduct a *de novo* review of any portion of the Magistrate Judge's opinion to which specific objections are made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ.P. 72(b). Given the breadth of the objections, the Court conducted a *de novo* review of the entire R&R. The Court adopts the R&R with certain exceptions that are stated below. Any objection that is not specifically granted is denied.

## BACKGROUND

The R&R extensively details the factual history of Sisney's claims and this Court will not repeat that history in full. In brief, Sisney is an inmate at the South Dakota State Penitentiary in Sioux Falls where he is serving a life sentence for first degree murder. Sisney makes both facial challenges and as-applied challenges to the current South Dakota Department of Corrections (DOC) pornography policy. Count V deals with Defendants' rejection of seven specific publications which were to be delivered to Mr. Sisney, those being: Pretty Face manga comics, Volumes 3, 4, 5, 6, a book entitled Thrones of Desire, and another book, Pride and Prejudice: The Wild and Wanton Edition, and an art book entitled Matisse, Picasso and Modern Art in Paris. Count VI deals with Defendants' rejection of nine pictures:

- Paradise by Michelangelo

- The Expulsion from the Garden by Michelangelo (Sistine Chapel ceiling painting, bay 4)

- Statute of David by Michelangelo

- Bronze The Creation of Adam and Eve by Lorenzo Ghiberti

- The Fall and Expulsion from the Garden of Eden by Michelangelo (Sistine Chapel ceiling painting)

- Study of the Resurrection of the Dead by Michelangelo

- Paradise Bronze by Michelangelo

## DISCUSSION
### Manga Comics

Plaintiff objects to the Report and Recommendation in part because the R&R found that the four Pretty Face manga comics would be censored under King. The Magistrate Judge concluded they presented a close question and that the four manga comic books contained a "sly ongoing joke of a sexual nature." The Court concludes that is not an inaccurate description in part of those four manga comic books but that is not all that they are about. There is no doubt that these comic books

are not good literature and they certainly are filled with sophomoric situations which do have a sexual tone. The books do not feature actual nudity or sexually explicit conduct so the fact that there is a sly ongoing joke which has sexual overtones is not enough to get the books censored under King. However, any discussion of what is or is not censored under King is dicta and is only used to demonstrate some of the differences between the policies approved in King and the policies now before the Court. The R&R does not treat the King discussion as dicta. This Court does consider the King discussions to be dicta because this Court does not believe that what there is of King policy in the present policy can be abstracted from the present policy to then apply those abstractions to the as-applied challenges. Nonetheless, this Court has applied the as-applied challenges under the King policy.

The King policy previously approved by this Court required sexually-explicit conduct or depictions of nudity or sexually-explicit conduct for a book to be censored. The King policy defined Nudity as "a pictorial depiction where genitalia or female breasts are exposed." Sexually Explicit is defined as "a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex or masturbation." The four comics are subject to being banned, as they were, under the current policy. Contrary to the R&R, this Court finds that even though it is a close question, in a *de novo* review, the four Pretty Face manga comics should not be banned under King. However, this difference of opinion on these comics points out one of the difficulties on these issues. If these four comics were before this Court on an appeal, it would not be a de novo review. Instead, the finding of the administrative body is entitled to some deference. Given that deference, this Court would not uphold a challenge to a ban of the four manga comics if applying the King standards. Some deference to the administrative body is practically necessary so that the courts are not reviewing every censored item. However, the standard to be applied by the administrative body has to be a constitutional standard, in contrast to the present standard.

## OTHER OBJECTIONS

The Plaintiff's objections raised the question of what does it take for female breasts to be exposed. Although that question is not answered in the King policy, one approach was the

Wisconsin prison regulations considered in Aiello v. Litscher, 104 F.Supp. 2d 1068, 1072 (W.D. Wisc. 2000). That regulation prohibited "the showing of the female breast with less than fully opaque covering of any portion below the top of the areola or nipple,".

Another objection by the Plaintiff involves the Coppertone® advertisement which the Magistrate Judge said is a close question but would be banned under the King policy. This Court does not find that the Coppertone® ad promoted itself based upon the nudity content of the ad. Instead, the Court views the Coppertone® ad based upon the "cuteness" of the ad. The Magistrate believes that the ad is "precisely the type of image one would hope to keep out of the hands of a child sexual offender," R&R, p. 85. The Court agrees with that observation but the Coppertone® ad meets neither the nudity nor the sexually explicit definition of the King policy. "Buttocks" being added to the King definition of nudity would meet that issue and provide for banning as was done in the current policy.

The King policy seems to make the best of a difficult question by approaching the problem of appropriate limitations on access and communication with a ban on nudity or sexually explicit representations. Even that ban, however, then does not take into account the world of legitimate art where nudity was commonly depicted in statuary from ancient time. How much viewing of fine art is forfeited when a person goes to prison? Given the wide varieties of depictions even in fine art, surely the privilege of viewing some fine art is forfeited by going to prison. King suggests no separate standard for fine art and the Court is not to legislate or draft legislation or regulations. With 50 states and the federal government all having prisons, there must be standards that have dealt with these difficult issues.

Plaintiff claims that there is a lack of "fair warning" as to what conduct violates prison policy with regard to sexually explicit material to be received by prisoners. The current policy does give fair warning and also does not suffer from being vague. The problem is that the current policy also is unconstitutional. Accordingly, the vagueness challenge of the Plaintiff is denied.

It is not for the Court to rewrite portions of the current policy. However, in adopting in part the R&R of Magistrate Judge Duffy, the Court agrees with Defendants' argument that the use of multiple staff members to screen material is not a portion of a basis for this Court holding that the current policy is unconstitutional. If only one person was reviewing all materials in one prison, there would probably be greater consistency in result, but it is for prison officials to determine whether one person or multiple employees should or even could have sole review responsibility

The basic claim of the Defendants is that the current policy really is no different than the censoring policy that the Court approved in King. That simply is not so as is amply detailed and demonstrated in the Report and Recommendation. The differences are significant. For example, the current policy prohibits manufacturing of images and objects where King did not. The current policy is applicable to written materials and that was not the case in King. The current policy is also applied to outgoing mail while the King policy did not apply censorship standards to outgoing mail. The current policy amounts to an all or nothing policy while King, due to its definition of "features," looked at the item in question in its entirety rather than, for example, censoring an entire book because of one page in the book even if that page was present not for its prurient interest but instead was a part of the narrative in the theme in the book as is, for example, the case of the book Some Luck. Some Luck by Pulitzer prize-winning author Jane Smiley is a 395 page novel published in 2014 as the first of a trilogy dealing with the life of an Iowa farm family starting in 1920. The book was selected by the South Dakota Humanities Council for the 2016 One Book South Dakota program and thus read by a variety of reading groups. A couple of short scenes in the narrative theme of the maturation of Frank, one of the principal characters, would get the book banned under the current policy. The King policy would not ban the book as those scenes are an integral, albeit brief part of the book and obviously a part of his early experiences and clearly not presented for any prurient purpose.

Although prison policy on access can be restrictive, this new and overly broad policy goes far beyond what is necessary and is unconstitutional.

IT IS ORDERED:

1. That the Magistrate Judge's Report and Recommendation, Doc. 105, is adopted with the exceptions noted above.

2. That Defendants' Motion for Summary Judgment, Doc. 67, is granted in part and denied in part as follows:

    a. Defendants' Motion for Summary Judgment on Mr. Sisney's facial challenge is denied.

    b. Defendants' Motion for Summary Judgment on Mr. Sisney's as-applied challenge is granted as to the Pretty Face books and denied as to the Coppertone® advertisement.

    c. Defendants' Motion for Summary Judgment on Mr. Sisney's as-applied challenge is denied as to the Thrones of Desire book, the Pride and Prejudice: The Wild and Wanton Edition book, the Michelangelo pictures, and Matisse Picasso and Modern Art in Paris; and

    d. Defendants' Motion for Summary Judgment on Mr. Sisney's due process claims is granted.

3. That Plaintiff Charles Sisney's Motion for Summary Judgment, Doc. 92, is granted in part and denied in part as follows:

    a. Mr. Sisney's Motion for Summary Judgment on his facial challenge is granted and the current South Dakota Department of Corrections anti-pornography policy applicable to its penal institutions is held to be unconstitutional.

    b. Mr. Sisney's Motion for Summary Judgment on his as-applied challenge is granted as to the Coppertone® advertisement and denied as to the Pretty Face books comic books.

    c. Mr. Sisney's Motion for Summary Judgment on his as-applied challenge is granted as to the Thrones of Desire book, the Pride and Prejudice: The Wild and Wanton Edition book; the Michelangelo pictures, and Matisse, Picasso and Modern Art in Paris book; and

   d. Mr. Sisney's Motion for Summary Judgment on his due process claims is denied.

4. That the Objections of Plaintiff and Defendants to the Report and Recommendation are granted and denied as stated in the above opinion. The Court notes that the 40 pages of Objections by the Defendants exceeds the 25 page briefing limitation set by Local Rule 7.2 but was nonetheless considered.

Dated this 29th day of September, 2016.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK
BY: *[signature]*
   DEPUTY